Filed 9/28/23  P. v. Salgado CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E080948 |
| v. | (Super.Ct.No. RCR18862) |
| ELIAS PERAZA SALGADO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Gregory S. Tavill, Judge.  Affirmed.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, and Robin Urbanski and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

Years ago, defendant Elias Peraza Salgado was sentenced to life without the possibility of parole (LWOP) for two murders that he committed when he was 19. Recently, he filed a motion for a "*Franklin* hearing."

A *Franklin* hearing allows a convict to preserve evidence of youth-related mitigating factors for purposes of a future youthful offender parole hearing pursuant to Penal Code section 3051.[1]  (See *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*); see also *In re Cook* (2019) 7 Cal.5th 439, 448-459.)  Juvenile offenders (i.e., those who were under 18 when they offended) who are sentenced to LWOP are eventually entitled to a section 3051 hearing.  Youthful offenders (i.e., those who were between 18 and 25 when they offended) who are sentenced to LWOP are not.  (§ 3051, subds. (a)(1), (b).)

The trial court denied defendant's motion for a *Franklin* hearing because he is a youthful offender sentenced to LWOP and therefore ineligible for a section 3051 hearing.

Defendant appeals.  He contends that denying *Franklin* hearings to youthful offenders with LWOP sentences:

(1)  Violates equal protection.

(2)  Results in cruel and unusual punishment.

We have previously rejected this equal protection contention.  So have all other appellate courts that have considered it — with one exception.  Defendant urges us to follow the exception, but we adhere to our prior opinion.

---

[1]     All further statutory references are to the Penal Code.

The cruel and unusual punishment contention rests on the premise that, just as juvenile offenders lack maturity, so do youthful offenders, even if not to the same degree; so, just as it is cruel and unusual punishment to sentence a juvenile offender without considering youth-related mitigating factors, it is also cruel and unusual punishment to sentence a youthful offender without considering youth-related mitigating factors. Our Supreme Court has held, however, that although maturity is a continuum, for cruel and unusual punishment purposes, the line must be drawn somewhere — and it is drawn at 18.

I

STATEMENT OF THE CASE

In 1990, when he was 19, defendant participated in a shooting from a motor vehicle that killed two people and wounded a third. In 1992, he was convicted by a jury. His convictions, after the judgment was modified on appeal, were on:

- Two counts of first degree murder (§§ 187, subd. (a), 189, subd. (a)), both with enhancements for intentionally causing great bodily injury by discharging a firearm from a vehicle (§ 12022.55, subd. (a)), and with a multiple murder special circumstance (§ 190.2, subd. (a)(3));

- One count of attempted murder (§ 187, subd. (a); former § 664, Stats. 1986, ch. 519, § 2; see now § 664, subd. (a)), with an enhancement for intentionally causing great bodily injury by discharging a firearm from a vehicle; and

- One count of shooting at an occupied motor vehicle (§ 246).

3

His sentence, again after the judgment was modified on appeal, was a total of life without parole (LWOP) plus four years.

In 2022, defendant, in pro. per., filed a motion for a *Franklin* hearing.

In his motion, he stated: "Salgado acknowledges that this court is bound by Court of Appeal authority holding that the exclusion of 18-to-25-year-olds sentenced to LWOP from youth offender parole does not violate equal protection. [Citation.] Nonetheless, to preserve this claim for further review, s/he files this . . . motion contending that the exclusion of 18-to 25-year-olds from youth offender parole violates his/her constitutional rights to equal protection [citations].

"Salgado further contends that the exclusion of 18-to 25-year-olds from youth offender parole, and the failure to provide any mechanism for parole in his/her case, violates the state constitutional ban on cruel or unusual punishment. [Citation.]" He attached a memorandum of points and authorities expanding on these arguments.

The trial court appointed counsel for defendant.

At the hearing on the motion, the trial court summarily denied it. It ruled that defendant was not eligible for a *Franklin* hearing because he had been sentenced to LWOP. It declined to follow *People v. Hardin* (2022) 84 Cal.App.5th 273 (*Hardin*), review granted Jan. 11, 2023, S277487 — which had held that section 3051's distinction between youthful offenders with LWOP and non-LWOP sentences violates equal protection — because review in *Hardin* was pending. It did not address defendant's cruel and unusual punishment argument.

4

II

EQUAL PROTECTION

Defendant contends that providing *Franklin* hearings to youthful offenders with non-LWOP sentences and juvenile offenders with LWOP sentences, but not to youthful offenders with LWOP sentences, violates equal protection.

With regard to the differential treatment of youthful offenders with non-LWOP sentences, this court is already on record as rejecting the identical contention. (*People v. Ngo* (2023) 89 Cal.App.5th 116 (*Ngo*), review granted May 17, 2023, S279458.)

In *Ngo*, we found "several rational bases for the unequal treatment." (*Ngo*, *supra*, 89 Cal.App.5th at p. 123.) "For one thing, section 3051 was enacted in response to [*People v.*] *Caballero* [(2012) 55 Cal.4th 262 (*Caballero*)]. In *Caballero*, the Supreme Court called for 'legislation establishing a parole eligibility mechanism that provides a defendant serving a de facto life sentence without possibility of parole for nonhomicide crimes that he or she committed as a juvenile with the opportunity to obtain release on a showing of rehabilitation and maturity.' [Citation.] It did not call for such a mechanism for any defendants — whether juvenile, youthful, or otherwise — serving a de jure LWOP sentence. The Legislature could rationally limit its response accordingly.

"For another, section 3051 provides for a youthful offender *parole* hearing. A youthful offender sentenced to LWOP is not entitled to *parole* at all. Just like all other adult offenders convicted of murder with special circumstances, a youthful offender

5

convicted of murder with special circumstances must actually spend the rest of his or her life in prison.

"If any further justification is needed, we find it in the difference in culpability. A person guilty of murder with special circumstances is the worst of the worst. This is the most heinous crime known to our Penal Code, and one of the few crimes subject to the death penalty in California. [Citations.]" (*Ngo*, *supra*, 89 Cal.App.5th at p. 123.)

We also noted that "a long line of cases have rejected the equal protection claim defendant makes here"; *Hardin* was the sole outlier. (*Ngo*, *supra*, 89 Cal.App.5th at p. 124, and cases cited.) We found *Hardin*'s reasoning flawed, in that (1) it incorrectly considered section 3051 not to be a sentencing statute; (2) it incorrectly limited the "rational basis" inquiry to the purposes of the challenged law; (3) it incorrectly required a perfect fit between means and ends; and (4) it incorrectly overlooked the existence of a rational basis for distinguishing between youthful offenders with de jure LWOP sentences and youthful offenders with de facto LWOP sentences (such as 50 years to life). (*Ngo*, *supra*, at pp. 124–126.)

Defendant relies primarily on *Hardin*. He disagrees with the reasons we stated in *Ngo* for declining to follow *Hardin*, but he provides no persuasive argument. We therefore adhere to *Ngo*.

With regard to the differential treatment of juvenile offenders with LWOP sentences, the obvious rational basis is age. "[B]oth the United States Supreme Court and our high court have repeatedly found the bright-line drawn between juveniles and

6

nonjuveniles to be a rational one when it comes to criminal sentencing. [Citations.]" (*People v. Jackson* (2021) 61 Cal.App.5th 189, 196–197.) Accordingly, the distinction that section 3051 draws between juvenile offenders with LWOP sentences and youthful offenders with LWOP sentences has repeatedly been upheld. (*Id.* at pp. 196–198; accord, *People v. Bolanos* (2023) 87 Cal.App.5th 1069, 1079, review granted Apr. 12, 2023, S278803; *People v. Sands* (2021) 70 Cal.App.5th 193, 204–205; *In re Murray* (2021) 68 Cal.App.5th 456, 463–465; *People v. Acosta* (2021) 60 Cal.App.5th 769, 779–781.)

III

CRUEL AND UNUSUAL PUNISHMENT

Defendant contends that denying *Franklin* hearings to youthful offenders with LWOP sentences results in cruel and unusual punishment. Basically, this is a contention that section 3051 itself results in cruel and unusual punishment.

In *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*), the Supreme Court held that the Eighth Amendment prohibits a mandatory LWOP sentence for a juvenile offender, even for homicide. (*Id.* at pp. 465, 479.) It explained, in part, that "children are constitutionally different from adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform, . . . 'they are less deserving of the most severe punishments.' [Citation.] . . . First, children have a '"lack of maturity and an underdeveloped sense of responsibility,"'" leading to recklessness, impulsivity, and heedless risk-taking. [Citation.] Second, children 'are more vulnerable . . . to negative influences and outside pressures,' including from their family and peers; they

7

have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings. [Citation.] And third, a child's character is not as 'well formed' as an adult's; his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity].' [Citation.]" (*Id*. at p. 471.) Therefore, "a sentencer [must] have the ability to consider the 'mitigating qualities of youth.' [Citation.]" (*Id*. at p. 476.)

In *People v. Franklin*, *supra*, 63 Cal.4th 261, the defendant was convicted of first degree murder, committed when he was 16 years old, and given the mandatory sentence (see *id*. at p. 272) of 50 years to life. (*Id*. at p. 271.) On appeal, the defendant argued that this was a de facto LWOP sentence, and that imposing a mandatory de facto LWOP sentence on a juvenile offender constituted cruel and unusual punishment. (*Id*. at p. 273.)

The Supreme Court agreed with the principle that imposing a mandatory de facto LWOP sentence on a juvenile offender constitutes cruel and unusual punishment. (*Franklin*, *supra*, 63 Cal.4th at p. 276.) However, it declined to decide whether Franklin's sentence was, in fact, a de facto LWOP sentence. Instead, it held that the enactment of section 3051 mooted his cruel and unusual punishment claim. It explained that the sentence of 50 years to life was no longer mandatory, and that the Board of Parole Hearings could consider the attributes of youth in deciding whether to require Franklin to actually serve that sentence. (*Id*. at pp. 276–280.)

Here, defendant argues that youthful offenders share "the mitigating qualities of youth" with juvenile offenders and not with adult offenders. He cites two law review

articles and one scientific article, all making the undeniable point that full maturity does not arrive with a thunderclap on one's 18th birthday. Thus, in his view, a mandatory LWOP sentence for a youthful offender constitutes cruel and unusual punishment; the Eighth Amendment requires that the sentencer must be able to consider the mitigating qualities of youth, at a section 3051 hearing or otherwise; and finally, if a youthful offender is entitled to a section 3051 hearing, then he or she is equally entitled to a *Franklin* hearing in preparation for that section 3051 hearing.

Our Supreme Court has repeatedly held that it is not cruel and unusual punishment to impose the death penalty on a youthful offender, as opposed to a juvenile offender. (*People v. Flores* (2020) 9 Cal.5th 371, 429–430 [18 to 21 years old]; *People v. Powell* (2018) 6 Cal.5th 136, 191–192 [18 years old]; *People v. Gamache* (2010) 48 Cal.4th 347, 404–405 [18 years old].) "[A] death judgment against an adult is not unconstitutional merely because that person may share certain qualities with some juveniles." (*People v. Powell*, *supra*, at p. 192.)

Most recently, in *People v. Tran* (2022) 13 Cal.5th 1169, it held that it is not cruel and unusual punishment to impose the death penalty on a youthful offender who was 20 when he committed murder. (*Id*. at pp. 1234–1235.) It explained: "'[T]he "'"qualities that distinguish juveniles from adults do not disappear when an individual turns 18,"'"' but nonetheless . . . the "'"age of 18 is the point where society draws the line for many purposes between childhood and adulthood"'"' and is "'"the age at which the line for death eligibility ought to rest."'"' [Citation.]" (*Ibid*.) It also did not find "'"the 'national

9

consensus' necessary to justify a categorical bar on the death penalty for individuals between the ages of 18 and 21 at the time of their offenses.  [Citation.] . . ."  [Citation.]'" (*Ibid*..)

Because, as to a youthful offender, death itself is not necessarily cruel and unusual punishment, neither is a mandatory LWOP sentence.  (*People v. Acosta*, *supra*, 60 Cal.App.5th at p. 781; *In re Williams* (2020) 57 Cal.App.5th 427, 439; *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1030–1032; *People v. Argeta* (2012) 210 Cal.App.4th 1478, 1482.)  That includes a mandatory LWOP sentence without access to a section 3051 hearing.

IV

DISPOSITION

The order appealed from is affirmed.

NOT TO BE PUBLISHED IN OFICIAL REPORTS

RAMIREZ _____
P. J.


We concur:

FIELDS _____
J.

RAPHAEL _____
J.